ANDRÉS ARANA, peticionario y apelado, *v.* LA COMISIÓN HÍPICA INSULAR DE PUERTO RICO, recurrida y apelante.

No. 3833.—*Visto:* Mayo 19, 1926. *Resuelto:* Julio 14, 1926.

COMISIÓN HÍPICA INSULAR—EXPULSIÓN DE CABALLOS DE LOS HIPÓDROMOS—REQUISITO PREVIO INDISPENSABLE—COMPORTAMIENTO DEL JOCKEY COMO CAUSA DE LA EXPULSIÓN.—Para expulsar un caballo de los hipódromos o tachar su nombre del *stud-book* como resultado de mal comportamiento del *jockey,* es un requisito previo indispensable que al dueño del animal se le dé una oportunidad razonable para ser oído.

SENTENCIA de *Pablo Berga,* J. (San Juan), declarando con lugar petición de *certiorari* y anulando resolución de la Comisión Hípica Insular, sin costas. *Confirmada.*

*Leopoldo Feliú,* abogado del apelado; *Hon. George C. Butte,* Attorney General, y *F. G. Pérez Almiroty,* abogados de la apelante.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La Comisión Hípica Insular apela de una sentencia, fun-

dada en la siguiente relación del caso y opinión del juez de distrito:

"Esta es una solicitud de Certiorari presentada por Andrés Arana contra la Comisión Hípica Insular, para revisar un acuerdo o resolución de la demandada de 2 de Noviembre de 1925, por el que se dispone la expulsión de un caballo de carreras denominado Metrallita, propiedad del peticionario y su eliminación del libro registro (Stud-book) por el fundamento de que en una carrera en el hipódromo 'Las Casas Racing Park' que se explota en San Juan y que se celebró el día 12 de Octubre, 1925, en que dicho animal tomó parte, se empleó una pila seca eléctrica para excitarlo por el jokey que lo montaba en tal ocasión.

"La ley por virtud de la cual se establece este recurso es la número 21, aprobada el 2 de junio, 1925, que empezó a regir a los 90 días después de su aprobación, la que dispone, en su artículo 21, lo siguiente:

" 'Art. 21.—Las Cortes de Distrito tendrán jurisdicción a instancia de parte perjudicada:

" '(a)—Para anular o revisar cualquier acto legislativo o administrativo de la Comisión Hípica Insular o de cualquiera de sus funcionarios o empleados que lesione derechos constitucionales de los querellantes o sea contrario a la Ley Orgánica o a las Leyes de Puerto Rico, mediante Certiorari.'

"El peticionario, como dueño del caballo de carreras expulsado, es parte perjudicada con derecho a establecer este recurso, y alega que el acuerdo o resolución de 2 de Noviembre, 1925, es nulo, ineficaz e ilegal y de ningún valor ni efecto legal por los motivos y fundamentos siguientes:

" '1.—Porque la recurrida no tuvo nunca jurisdicción para tomar tal acuerdo o resolución:

" '(a).—Porque no medió notificación previa alguna al peticionario de procedimiento o investigación de la recurrida en relación con tal caballo ni con el peticionario;

" '(b) Porque tampoco se dió al peticionario oportunidad alguna para comparecer y ser oído previa ni posteriormente en relación con tal acuerdo o con procedimiento o investigación en que estuviere envuelto el peticionario o dicho animal de su propiedad.

" '(c) Porque habiendo derogado la ley creando a la recurrida, la Ley No. 86 de agosto 11 de 1923, dicha Ley No. 21 de 2 junio de 1925, no proveyó para la continuación de las inscripciones de caba-

llos hechas al amparo de la Ley así derogada o de cualquier otra ley anterior.

" '2.—Porque el mencionado acuerdo, por las razones que se dejan expuestas en los incisos precedentes, viola los preceptos de los artículos 4, inciso cuarto; y 12 de la mencionada Ley No. 21 de Junio 2, 1925, así como los incisos 1 y 9 del Art. 2 de la Ley Orgánica del país.

" '3.—Porque la recurrida no tiene poder ni facultad de acuerdo con la mencionada Ley No. 21 de Junio 2 de 1925, para cancelar la inscripción de dicho caballo del peticionario ni para decretar su expulsión como animal de carreras de los hipódromos de Puerto Rico.

" '4.—Porque tampoco tiene ni tenía la recurrida en dicha fecha facultad ni poder para imponer castigo alguno por el empleo de ningún objeto u aparato excitante a caballos de carreras, de acuerdo con el Art. 35 de la mencionada Ley No. 21 de Junio 2 de 1925, ni de acuerdo con ningún otro artículo o disposición de la tal Ley.

" '5.—Porque tal acuerdo o resolución se tomó por la recurrida sin que tuviera prueba alguna en absoluto de que persona alguna usara la mencionada pila seca eléctrica en el dicho caballo mientras estuviera éste corriendo en carrera alguna, en ningún hipódromo de Puerto Rico.'

"En el acto de la vista de la solicitud de Certiorari y como contestación o *return* al auto, la Comisión demandada presentó certificaciones por el Secretario, con el sello de la Comisión de la inscripción en el registro de caballos del país (Stud-books) del caballo media sangre denominado 'Metrallita' con fecha 20 de julio de 1925, a nombre de Fernando Castro, y de su venta a Andrés Arana, el peticionario, en Julio 28, 1925; del expediente titulado IN RE Fernando Castro, dueño de caballos; y del expediente titulado IN RE Julián de la Cruz, jockey. En ambos expedientes se trata del hecho de haberse encontrado en la maleta del jockey Julián de la Cruz, por el Juez de Peso José Casellas, una pila seca eléctrica en las carreras celebradas el Lunes 12 de Octubre, 1925.

"Y de dichos expedientes, a los efectos de este caso, aparece lo siguiente: Que informado el Jurado del hipódromo, después de la quinta carrera de las celebradas el día 12 de octubre, 1925, de la ocurrido con el caballo Metrallita, dicho jurado sometió el caso a la Comisión Hípica Insular para su resolución, acompañando la pila a que se hace referencia; que la Comisión acordó en 13 de Octubre 1925, practicar una investigación de los hechos denunciados y dispuso la citación de Fernando Castro, dueño de caballos, y de Julián de la Cruz, jockey, para que comparecieran el día 19 del mismo

mes, a las 8 de la noche, a mostrar causas por las cuales no debían
ser castigados por el hecho reportado y también acordó suspender
al jockey Julián de la Cruz y a los caballos 'Metrallita' y 'El Nene'
de tomar parte en las carreras hasta nueva orden de la Comisión;
que el Sr. Luis Arana, con fecha 14 de octubre de 1925, se dirigió
a la Comisión solicitando, como representante de Andrés Arana, el
aquí peticionario, que se hallaba entonces ausente en los Estados
Unidos, una audiencia para tratar el asunto respecto a la informa-
ción verbal que le diera el Juez de Inscripciones de que los caballos
'El Nene' y 'Metrallita', propiedad de su representado, no podían
ser admitidos a inscripciones; que la Comisión en sesión de 15 de
Octubre, 1925, acordó contestar al compareciente Luis Arana que,
estando el caso bajo investigación, podía comparecer y ordenó su
citación oficial para el lunes día 19, a las 8 de la noche, en que se
daría principio a dicha investigación, para depurar los hechos que
habían dado origen a la expulsión temporal de los caballos mencio-
nados; que el Secretario-Auditor dirigió a Luis Arana una comu-
nicación, en 15 de octubre, 1925, de conformidad con lo dispuesto,
citándolo para la investigación.

"De los récords taquigráficos de las investigaciones practicadas
en los días 19 y 20 de octubre de 1925, aparece también que se llamó
primeramente para investigación el caso de Julián de la Cruz,
Jockey, quien asistió al acto en persona y representado por su abo-
gado Gustavo Jiménez Sicardó; que éste manifestó en ese acto que
tenía entendido que también estaba señalada la vista del caso con-
tra el 'Sr. Arana, a quien asimismo representaba, referente a los ca-
ballos 'El Nene' y 'Metrallita', y solicitó que dicho caso se viera
en primer término, lo que denegó la Comisión; que investigado el
caso contra Julián de la Cruz, en el día 19 la Comisión lo dió por
terminado, y procedió luego, en el día 20, a la investigación contra
Fernando Castro, dueño de caballos, quien compareció en persona
y por su abogado Gustavo Jiménez Sicardó, y después de practicada
la misma, el caso quedó también sometido en cuanto al referido
Fernando Castro.

"Y en 2 de noviembre de 1925, la Comisión demandada, resol-
vió dichos casos contra Julián de la Cruz y Fernando Castro, adop-
tando un solo acuerdo como sigue:

" '(a) Que se cancele, como por la presente se cancela, defini-
tivamente, la licencia al jockey Julián de la Cruz, para actuar en
los hipódromos de Puerto Rico.

" '(b) Exonerar de toda culpa y responsabilidad al Sr. Fer-
nando Castro, por falta de pruebas en la investigación.

" ' (c) Exonerar al caballo conocido por "El Nene", y

" ' (d) Expulsar al caballo "Metrallita", eliminando su nombre del Stud-book.'

"Este acuerdo se adoptó por unanimidad, excepto en cuanto al último particular referente a la expulsión del caballo 'Metrallita' y eliminación de su nombre del *Stud-book,* en que votaron en contra los comisionados Sres. Díaz Collazo y Abril, explicando su voto el Sr. Díaz Collazo, entre otros fundamentos porque el castigo impuesto resultaba perjudicial para el Sr. Arana, quien estaba ausente de Puerto Rico, y a quien la Comisión no había oído, y no para el caballo. El Comisionado Sr. Martínez Dávila manifestó entonces, explicando su voto, que el jockey era un agente de Arana y que debía considerarse responsable al principal por los actos de su empleado o agente.

"Dicho acuerdo fué entonces comunicado al peticionario Andrés Arana, por medio de la siguiente comunicación:

" 'Noviembre 3, 1925.—Sr. Andrés Arana, San Juan, P. R.— Señor:—Para su conocimiento y gobierno, le acompaño una copia de la resolución aprobada por la Comisión Hípica Insular en 2 de los corrientes, disponiendo expulsar al caballo "Metrallita" de su propiedad y eliminando su nombre del Stud-book.—Atentamente, (fo.) J. PEÑA REYES, Secretario-Auditor."

"De los documentos remitidos por la Comisión demandada claramente resulta que Andrés Arana, dueño del caballo 'Metrallita', no fué citado en forma, como se hizo en cuanto a Julián de la Cruz y Fernando Castro, ni se practicó investigación alguna en cuanto a él, pues si bien el acto de la vista del caso contra Julián de la Cruz el abogado Gustavo Jiménez Sicardó manifestó que también representaba al Sr. Arana y pidió que su caso fuera llamado en primer término, no se hizo tal cosa ni se practicó investigación contra dicho señor, quien entonces se hallaba en los Estados Unidos, y, por tanto, como dice el Comisionado Sr. Díaz Collazo, no se le oyó en modo alguno.

"La Ley creando la Comisión Hípica Insular, citada, establece, en su artículo 4, que la misma 'deberá, en todo cuanto sea posible, seguir en sus investigaciones y actuaciones los procedimientos señalados en la ley a las cortes de justicia para la tramitación y despacho de sus asuntos', facultándose a los miembros de la Comisión, por el artículo 6, para tomar juramentos en todos aquellos casos o asuntos que se relacionen con el cumplimiento de la ley y de su reglamento; y dispone en su artículo 12 que sólo 'por justa causa, previa audiencia de partes y oportunidad de defenderse, podrá suspen-

derse temporalmente o revocar la licencia de cualquier hipódromo, dueño de caballos, jockey o cuadrero.'

"La expulsión del caballo 'Metrallita' y su eliminación del registro equivale a un castigo para el dueño y no para el animal, como muy bien expresó el Comisionado Sr. Díaz Collazo, y parece a esta Corte que la Comisión demandada debió hacer al peticionario la debida notificación y darle la oportuna audiencia, antes de imponerle el castigo de la expulsión de su caballo y eliminación del registro. Desde luego que no es necesario, que la notificación se haga con todos aquellos requisitos que ordinariamente se exigen en un procedimiento criminal, ni que sean observadas todas las formalidades de un juicio, pero debe hacerse, y esto está en lo posible, una notificación razonable que especifique las omisiones o infracciones imputadas y debe darse una oportunidad también razonable para la defensa. La Comisión hizo notificación y dió la audiencia a Julián de la Cruz y Fernando Castro, como lo demuestran los dos expedientes tramitados, y náda había que les impidiera seguir el mismo procedimiento con Andrés Arana.

"Véase los casos de *Belaval* vs. *Todd,* 22 D.P.R. 633; *Cintrón* vs. *Berríos,* 24 D.P.R. 728; y *Lavergne* vs. *Comisión de la Policía Insular,* 27 D.P.R. 830, que tratan, precisamente sobre lo que se entiende por la frase 'por justa causa, previa audiencia de partes y oportunidad de defenderse.'

"Por las razones expuestas, se declara con lugar la solicitud de *certiorari,* y en su consecuencia, se anula la resolución o acuerdo de la Comisión Hípica Insular, de 2 de noviembre de 1925, en cuanto al particular letra (d) que se refiere a la expulsión del caballo 'Metrallita', y la eliminación del libro de registro (Stud-book), sin especial condenación de costas. Regístrese sentencia y comuníquese a la demandada."

Para los fines de esta opinión puede admitirse que Arana tenía suficiente aviso de la fecha en que empezaría la investigación pero convenimos con la corte inferior en que no se dió una oportunidad razonable a dicho dueño para ser oído. Tampoco podemos convenir con la apelante que en este caso no era necesario ni dar aviso ni oportunidad para ser oído.

Al comenzarse el juicio del *jockey* ocurrió el siguiente incidente:

"*Sr. Jiménez Sicardó.* Tengo entendido que para esta noche

está señalada la vista del caso contra Julián de la Cruz y también tengo entendido que está señalada la vista contra el señor Arana, referente a los caballos 'Nene' y 'Metrallita', y si esto es así, yo solicitaría de esta Comisión que antes de proseguir con el caso contra Julián de la Cruz, invirtiéramos los términos y forma de la misma, es decir, que procediéramos primero a la de los caballos del señor Arana, que yo represento también, porque me parece que con ello, aligeraríamos el camino de la investigación.

"*Sr. Díaz Collazo:* Ya la Comisión estuvo considerando este asunto y quiere seguir este camino, esto es, celebrar primeramente la vista del caso del jockey J. de la Cruz.

"*Sr. Martínez Dávila:* Entiendo que lo de los caballos es una consecuencia de lo del jockey.

"*Sr. Jiménez Sicardó:* Pero si yo lograra convencer a los caballeros de la Comisión, me parece que en esa forma aligeraríamos la investigación.

"*Sr. Díaz Collazo:* Ya la Comisión lo resolvió así. Seguir este camino.

"*Sr. Jiménez Sicardó:* Si ya está resuelto por la Comisión, entonces está bien."

El abogado de Arana hizo perfectamente claro su entendido de que se investigara, se viera y se condujera el caso contra Arana o contra los caballos de éste como un procedimiento o juicio distinto y separado, bien antes o después del caso del *jockey.* La Comisión aparentemente accedió a esta sugestión de celebrar juicios separados, aunque insistió en que se procediera con los casos en el orden que ya la Comisión había determinado. La manifestación de Díaz Collazo de que la Comisión ya había considerado el asunto y deseaba resolver primeramente el caso del *jockey,* hecha en respuesta a la petición de que el caso contra Arana o contra sus caballos se resolviera primero, claramente indicaba que el caso últimamente mencionado se vería más tarde.

La opinión expresada por Martínez no era necesariamente, incompatible con el curso del procedimiento calculado por el abogado y por la Comisión.

El caso de Castro por su naturaleza al igual que éste dependía más o menos de otras circunstancias. Tan es así

que desde el primer momento se convino en que la prueba presentada en el caso del *jockey* constituía el caso contra Castro. Pero a Castro se le permitió entonces presentar su prueba, así lo hizo. De todos modos, Martínez expuso su propia opinión, mientras que la Comisión parece haber hablado por mediación de Díaz Collazo. Y, sea esto también como fuere, si en aquel entonces la Comisión tenía en mente expulsar o exonerar el caballo o los caballos pertenecientes a Arana fundándose en la prueba presentada en el caso del *jockey,* sin hacer ninguna otra investigación o sin celebrar un juicio separado en el cual se diera al dueño oportunidad de ser oído, se debió comunicar tal resolución al abogado. El hecho de no habérsele notificado tiende más o menos persuasivamente a la conclusión de que en lo que a la Comisión o a una mayoría de ella se refería, la idea de expulsar uno de los caballos y de exonerar al otro, sin las formalidades de oir al dueño o a su representante fué una reflexión tardía.

La apelante insiste en que de acuerdo con el artículo 244 del Reglamento adoptado por la Comisión Hípica interpretado en relación con el artículo 256, no es necesario dar aviso al dueño cuando se va a expulsar un caballo como resultado del mal comportamiento del *jockey,* que ya ha sido debidamente convicto y privado de su licencia.

Los artículos mencionados dicen así:

"Art. 244.—Todo jockey o *trainer* que, a juicio del jurado o de la Comisión Hípica Insular fuere culpable de hacer perder el caballo por descuido, negligencia o por medios fraudulentos o sobornar a un jockey, o de combinarse con alguna persona para que se pierda cualquier caballo, o que utilizare cualesquiera medios ilícitos o ilegales, será suspendido por el tiempo que determine el Jurado o la Comisión Hípica Insular o incapacitado para montar o acondicionar ningún caballo de carreras y podrá ser excluído, además de los hipódromos de Puerto Rico. . . . . Todo caballo que haya sido objeto de tales manejos será excluído, a juicio del Jurado o de la Comisión Hípica Insular de las carreras en todos los hipódromos de la isla. . . . .".

"Art. 256. Queda terminantemente prohibida la aplicación de

inyecciones y el empleo de drogas o cualquier sustancia, aparato u objeto que produzca efectos enervantes o excitantes en los caballos para ganar o perder una carrera excepto el foete o espuelas. La persona que infrinja este artículo será castigada con la expulsión definitiva de los hipódromos de Puerto Rico y sometida a los tribunales de justicia.''

No hallamos nada en estos artículos que sostenga la conclusión que de ellos se desea inferir. Pero aún si se pudiera dar la interpretación sugerida por la apelante, la Comisión no tiene poder para derogar el artículo 12 o cualquier otra disposición específica de la ley que la creó. El expulsar un caballo o tachar su nombre del *stud-book* equivale en ese sentido a revocarle la licencia al dueño. Si a un dueño, sin notificársele ni dársele oportunidad de ser oído, puede privársele del derecho de correr sus caballos, el estatuto que requiere tal notificación y vista como un requisito indispensable antes de revocarse una licencia no tendría efecto alguno.

*La sentencia apelada debe ser confirmada.*